

PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| VINCENT L. ABELL | : | Case No. 13-13847PM |
| | : | Chapter 11 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| REVERSE MORTGAGE SOLUTIONS, INC. | : | Adversary Proceeding No. 13-00335 |
| | : | |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| VINCENT L. ABELL, *et al.* | : | |
| | : | |
| Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | | |

## MEMORANDUM OF DECISION

This matter came before the court for hearing on April 29, 2014. Before the court are three motions – the "Trustee's Motion for Partial Judgment on the Pleadings, or in the Alternative, Partial Summary Judgment" filed by Roger Schlossberg in his capacity as Chapter 11 Trustee of the bankruptcy estate of Vincent L. Abell ("the Debtor"); the "Plaintiff's Opposition to Trustee's Motion for Partial Judgment on the Pleadings, or in the Alternative, Partial Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment on Count II" filed by Reverse Mortgage Solutions, Inc. ("RMS") wherein RMS seeks summary judgment on Count II of the Amended Complaint; and the "Trustee's Motion to Dismiss Claims in the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)" wherein the Trustee

seeks dismissal of Counts I, III, VII, VIII, IX and XII of the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

The court opens this opinion with an acknowledgment that the foreclosure rescue scheme operated by the Debtor was an out and out scam. Over a long period of time, the Debtor engaged in a scheme to take advantage of uneducated and very often elderly people who were facing foreclosure threats. Through associates he would offer financing to "help" his victims out of their financial situation. Contrary to what they were told about financing, they would then be tricked into deeding the property to him or his nominee. Then, he would drain the equity from the property. The final villainous act was to seek to evict his victims from the property that they were lead to believe they still owned. The outrageous conduct of this enterprise cannot be overstated. The facts of this adversary proceeding illustrate this conduct and its impact upon the borrowers and third parties. The following is the chronology of events leading up to this adversary proceeding.

1. *November 15, 1972.* A deed was recorded among the land records of the District of Columbia conveying 4428 New Hampshire Avenue, NW, Washington, D.C. 20011 ("the Property") to Oscar L. Spencer and Dorothy Jean Darden ("Spencer" and "Darden").

2. *March 26, 1997.* A deed of trust executed by Spencer and Darden on March 19, 1997, was recorded securing a debt of $97,425.34 in favor of OneMain Financial, Inc. f/k/a Associates Financial Services Company of Maryland ("Associates").

3. *May 13, 2004.* A deed was executed by Spencer and Darden conveying the Property to the Debtor. As a part of the transaction, the Debtor or his controlled entity leased the property back to Spencer and Darden.

4. *August 20, 2004.* The Debtor, through Modern Management Company, filed suit in the Landlord Tenant Division of the Superior Court of the District of Columbia against Spencer following an alleged default in rental payments.

5. *December 11, 2004.* Darden and Spencer filed an Answer, Plea of Title and Jury Demand in response to the landlord/tenant action alleging that they had not signed the deed before a notary public and did not intend to sign a deed or a lease and that they were prevented from reading or copying the documents they were told to sign by the Debtor's co-conspirator.

6. *April 13, 2008.* A deed was executed by Spencer and Darden conveying the Property to Mary E. Booker ("Booker"). The deed was recorded June 4, 2008.

7. *April 23, 2008.* The deed executed by Spencer and Darden to the Debtor was recorded.

8. *June 27, 2008*.  An Adjustable Rate Home Equity Conversion Deed of Trust was executed by Booker to Bank of American, N.A.  The Plaintiff asserts that it is the current beneficiary of the deed of trust.

9. *May 1, 2009*.  Booker died.

10. *October 18, 2010*.  Following a mediation session, Spencer and Darden, through counsel, and the Debtor signed a praecipe in the landlord/tenant action whereby the Debtor agreed to vacate the deed of May 13, 2004, upon condition of Spencer and Darden paying the Debtor $85,000.00 by April 30, 2011.  Failure to pay the settlement sum would result in a non-redeemable judgment of eviction against them "with a stay until May 30, 2011 and any & all claims against the plaintiff, Mr. Abell, being dismissed with prejudice and his deed deemed valid."

11. *June 10, 2011*.  The Plaintiff was granted a Non-Redeemable Judgment for Possession of the Property.

12. *July 13, 2011*.  The Defendants' Request for a Stay of Execution of the Writ of Restitution was denied

13. *August 14, 2012*.  Rebecca B. Kinsey was appointed Administrator of the Estate of Mary E. Booker.

The First Amended Complaint is filed in twelve counts.[1]  Count I seeks a Declaratory Judgment that RMS took its interest as a *bona fide* purchaser of the Property free of any interest of the deed to the Debtor dated March 13, 2004, and recorded April 23, 2008, and free as well from the claims of various judgment creditors of the Debtor that are purported liens on the Property.  Count II seeks Equitable Subrogation on account of payment of a lien securing Associates in the sum of $97,409.63 and for $61.708.21 for taxes and insurance paid in connection with the Property.  Count III seeks a ruling to quiet title relating to an alleged cloud on the title of the Plaintiff.  Count IV seeks the imposition of an equitable lien or constructive trust with a priority of March 26, 1997, the date of recording of one of the deeds of trust securing an earlier lender whose debt was paid off with funds advanced by the Plaintiff.  Count V seeks a preliminary injunction prohibiting the Debtor, and therefore the Trustee and the creditors holding judgment liens, from selling or encumbering the Property.  Count VI seeks an order compelling OneMain Financial, Inc. to execute releases of the deeds of trust originally securing Associates.  Count VII seeks a declaratory judgment that the deed obtained by the Debtor was procured

---

[1] RMS's First Amended Complaint for Equitable Subrogation, Reformation of Instrument, Imposition of Lien on Real Property and Other Relief was filed on February 7, 2014 (Dkt. No. 67-1).

through fraud and is void *ab initio*, that Booker took title to the Property free of any interest held by the Debtor and that the deed of trust held by the Plaintiff is in a first lien position. Count VIII makes the same claims and seeks the same relief as Count VII and charges that the loan to Spencer and Darden was an illegal loan transaction and a violation of the District of Columbia Loan Shark Act. Count IX makes the same claims and seeks the same relief as Count VII and charges that the Spencer did not sign any of the pertinent documents and that his signature was forged. Count X charges that the Debtor deliberately withheld recording the deed until he became aware that another party was going to advance funds to pay off the Associates loan. The Plaintiff seeks punitive damages and attorney's fees on account of the fraud alleged. Count XI seeks the same relief as Count VII and charges that the Debtor was not a *bona fide* purchaser of the Property. Count XII seeks the imposition of a constructive trust on account of the fraudulent, deceitful and unlawful conduct of the Debtor in not recording his deed until he became aware of the pendency of the Bank of America loan.

      The court will first deal with RMS's cross-motion for summary judgment. There is no dispute that $97,409.63 of the proceeds of the Plaintiff's loan to Booker were used to pay off the debt secured by the Associates' deed of trust. RMS is entitled to recover under the doctrine of equitable subordination. A lender who pays off a pre-existing secured debt and takes a new mortgage as security for the loan is subrogated to the rights of the first mortgagee, as against intervening lienholders. "In other words, the lender steps into the shoes of the mortgagee whom it has paid off and receives that mortgagee's priority over subsequent liens." *HSBC Bank USA, N.A. v. Mendoza*, 11 A.3d 229, 235 (D.C. 2010). In *Eastern Savings Bank, FSB v. Pappas*, 829 A.2d 953, 957-59 (D.C. 2003), the District of Columbia Court of Appeals, relying extensively on *G.E. Capital Mortgage Services, Inc. v. Levenson*, 657 A.2d 1170 (Md. 1995) and *Burgoon v. Lavezzo*, 68 App. D.C. 20, 92 F.2d 726, 113 A.L.R. 944 (D.C. 1937), reaffirmed the doctrine of equitable subordination. The court's ruling in upholding the doctrine was squarely in line with the Maryland court's application of the principle that one who pays the mortgage of another and takes a new mortgage as security will be subrogated to the rights of the first mortgagee as against any intervening lienholder. Similarly, the court found the issue of constructive notice immaterial. The court will enter partial summary judgment as to this payment. Any further relief for the Plaintiff will require trial.

      While the court has little doubt that Spencer and Darden were poster children victims of the Debtor's scams, where does this leave the Plaintiff as to the other eleven counts? The Plaintiff would have Booker, who received the Property for no consideration, to be a *bona fide*

purchaser. She was not. She obtained title to the property without paying anything and without assuming liability for the underlying debt. As explained by Judge Teel in the case of *In Re Technical Land, Inc.*, 172 B.R. 429, 436 (B.C. D.C. 1994) (citing *Wright-Blodgett Co. v. United States,* 236 U.S. 397, 404 (1915)), a party cannot be a *bona fide* purchaser for valuable consideration if such consideration is not actually paid before the purchaser learns of the prior unrecorded interest.

As to Count I, the Trustee argues that when the loan to Booker was made, she and the lender had record notice of the Debtor's deed and, therefore, D.C. Code § 42-401 barred them from the status of *bona fide* purchasers without notice. As stated in *D.C. Oil, Inc. v. ExxonMobil Oil Corp.*, 746 F. Supp.2d 152, 156 (D.D.C. 2010), ". . . we look to the date the deed was delivered, not the date it is recorded." Section 42-401 of the D.C. Code provides:

> Any deed conveying real property in the District, or interest therein, or declaring or limiting any use or trust thereof, executed and acknowledged and certified as provided in §§ 42-101, 42-121 to 42-123, 42-306, and 42-602 and delivered to the person in whose favor the same is executed, shall be held to take effect from the date of the delivery thereof, except that as to creditors and subsequent bona fide purchasers and mortgagees without notice of said deed, and others interested in said property, it shall only take effect from the time of its delivery to the Recorder of Deeds for record.

The Debtor's deed was presented for recordation and bears the Recorder of Deeds stamp of April 23, 2008. The deed of trust securing the Plaintiff's predecessor was dated June 27, 2008, and recorded on July 9, 2008. It was filed well after the effective date of the Debtor's deed. Under these circumstances, the recording statute governs the result.

Count III, seeking to quiet title, alleges that Spencer did not sign the deed to the Debtor and that is was falsely notarized. Count VII, for declaratory relief that the deed to the Debtor was procured by fraud and void *ab initio*, makes similar allegations. As to the notarial deficiency, the Plaintiff's claim is untimely. D.C. Code § 42-403 provides:

> Any instrument recorded in the Office of the Recorder of Deeds on or after April 27, 1994, shall be effective notwithstanding the existence of 1 or more of the failures in the formal requisites listed in § 42-404, unless the failure is challenged in a judicial proceeding commenced within 6 months after the instrument is recorded.

The claim that the Trustee's deed that conveyed his property at the foreclosure sale did not conform to formal requisites of an instrument under District of Columbia law was untimely, where, even if the instrument was defective when it was recorded, the "borrowers" failed to challenge the instrument in a judicial proceeding commenced within six months after the instrument was recorded. This action is well beyond the statutory limitations. A deed is

effective no matter how many formal defects there may be, unless challenged in a judicial proceeding within six months after it is recorded. *Henok v. Chase Home Finance*, LLC, 915 F.Supp. 2d 162, 172 (D.D.C. 2013).

The Trustee urges throughout his motion that the Plaintiff is barred by the doctrine of *res judicata*. The court finds that, under District of Columbia law as set out in the case of *U.S. Bank v 1905 2nd Street, NE, LLC*, 85 A.3d 1284, 1287 (D.C. 2014), that RMS is not bound by the capitulation by Spencer and Darden. U.S. Bank was another foreclosure rescue case. The court found that is was not to be in privity with the former householder. As the Court of Appeals explained:

> "Privity has been described as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Carr v. Rose*, 701 A.2d 1065, 1075 (D.C.1997) (internal citations and quotation marks omitted). "Traditional categories of privies include 'those who control an action although not parties to it ...; those whose interests are represented by a party to the action ...; [and] successors in interest.'" *Patton v. Klein*, 746 A.2d 866, 870 (D.C.1999) (quoting Carr v. Rose, 701 A.2d at 1075 (internal citations and quotation marks omitted) (alteration in original)). *See also Smith v. Jenkins*, 562 A.2d 610, 615 (D.C.1989) ("A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case.").
>
> For res judicata to apply to U.S. Bank's claims regarding the foreclosure rescue deed, U.S. Bank must be a party in privity with Mr. Wilson. Because U.S. Bank's relationship with Mr. Wilson does not constitute any of the traditional categories of privity –U.S. Bank did not control any of Mr. Wilson's prior litigation over the validity of the foreclosure rescue deed, Mr. Wilson did not represent U.S. Bank's interests in his prior litigation, and U.S. Bank is not Mr. Wilson's successor in interest– the trial court misapplied the doctrine of res judicata.

Accordingly, as to Count III, the Trustee prevails on summary judgment. As to Count VII, because there exists no privity between Darden and RMS and the attack on the notarization of the deed is time barred, it will be dismissed.

Count VIII charges, in part, a violation of the District of Columbia Loan Shark Act. While this statute, D.C. Code § 26-912(a)(5), excludes loans greater than $25,000.00 from its provisions, the amended complaint appears to describe a cash advance of a lesser amount. However, the borrowers were Spencer and Darden. The doctrine of *res judicata* bars their claim for this cause of action. The Plaintiff does not succeed to their rights. Likewise the Plaintiff's reliance on the District of Columbia usury statute, D.C. St. §§ 28-3301 *et seq*. is unavailing.

Violation of that statue results only in the forfeiture of the interest contracted for (§§ 28-3301, 28-3305), recovery of usurious interest paid if the subject of a timely action (§ 28-3305) criminal penalties (§ 28-3313) and recovery of attorney's fees, damages and proper relief by the borrower.  *Poblete v. Indymac Bank*, 657 F.Supp.2d 86 ,96 (D.D.C. 2009).  None of these causes of action are available to the Plaintiff.

Count IX differs from Count III in that it charges that the deed to the Debtor was a forgery.  Here the Plaintiff has stated a cause of action.  "It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance."  *M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 191 (D.C. 1992). (*Citing Unity Banking & Saving Co. v. Bettman*, 217 U.S. 127, 135, 30 S.Ct. 488, 489-90, 54 L.Ed. 695 (1910); *Harding v. Ja Laur Corp.*, 315 A.2d 132, 135-36 (Md.1974)).  Such a deed is void from its inception insofar as Spencer's interest is concerned.   This count presents an issue of fact.

Count X charges the Debtor with fraud to wit he "intentionally failed to inform Bank of America of the Debtor's Deed so that Bank of America would make the Loan to Booker and pay off the First Associates Deed of Trust Loan."  The Debtor is charged with doing this knowing that the Associates loan was in the process of foreclosure.  The effect of the alleged fraudulent concealment is that the lender went forward with the loan, thus enabling the Debtor to acquire the property free of the defaulted loan.  The term "fraudulent concealment" is generally used to toll the running of the statute of limitations*.  Pena v. A. Anderson Scott Mortgage Group, Inc.*, 692 F.Supp.2d 102, 107-08 (D.D.C. 2010).  The Plaintiff alleges that the Debtor had the duty to speak.  But, the Debtor had no relationship with Bank of America that required him to disclose his action.  As explained in *Jefferson v. Collins*, 905 F.Supp. 2d 269, 287 (D.D.C. 2012):

> To be sure, "D.C. law provides that nondisclosure of a fact can constitute a fraudulent misrepresentation" when " 'there is a duty to speak.' " *Sununu v. Philippine Airlines, Inc.*, 792 F.Supp.2d 39, 51 (D.D.C.2011) (*quoting Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C.1948)). But, in the District of Columbia and other jurisdictions, a duty to speak arises in the fraud context only when there is some special relationship or contact between the parties justifying the imposition of a duty. *See Pyne v. Jam. Nutrition Holdings Ltd.*, 497 A.2d 118, 131 (D.C.1985) (recognizing a duty to speak based on a fiduciary relationship); *Kapiloff*, 59 A.2d at 518 (recognizing an "affirmative duty to speak as a result of a partial disclosure"); *In re Spectrum, Ltd.*, No. 02–02463, 2007 WL 2320587, at *2 (Bankr. D.D.C. Aug. 9, 2007) (rejecting fraudulent non-disclosure argument where the "complaint fail[ed] to allege the existence of a special or fiduciary relationship between [the plaintiff] and the defendants or other circumstances that would give rise to a duty to disclose" under District of Columbia law); *accord Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir.2010)

("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship.... Outside of such a relationship, a duty to disclose may arise, among other circumstances, when one makes a partial disclosure and conveys a false impression." (internal citations and quotation marks omitted)).

Here, the Debtor had no such relationship with the Bank of America. If it was damaged as a result of the Debtor's devious conduct, it has not sought compensation therefor. RMS was not the party defrauded. The cause of action, if it exists, is the property of Bank of America. RMS has a claim against Bank of America, but it has no standing to be compensated for a wrong against Bank of America.

Count XII charges that by waiting to record the Debtor's Deed until such time as Spencer and Darden paid off the Associates' lien that the Debtor was inequitably and unjustly enriched and that a constructive trust should be placed upon the Property in the amount secured by Associates' lien. A constructive trust may arise where a person holding title to property is subject to an equitable duty to convey it to another because he would be unjustly enriched if he retained it. *Gray v. Gray*, 412 A.2d 1208, 1210 (D.C. 1980). Here again, if any party was aggrieved by the Debtor's action it was Bank of America. The terms of the transfer of the Booker note to it are not in this record. Nevertheless, the court will not grant the motion to dismiss this count until it has the totality of the circumstances before it.

An order will be entered in accord with the foregoing.


cc: All parties



**End of Memorandum of Decision**